UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ALAN K. STUART, et al.,

    Plaintiffs,

Case No. 2:16-cv-622
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Terence P. Kemp

v.

RUST-OLEUM CORPORATION, et al.,

    Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration on Defendants' Motion to Dismiss. (ECF No. 25.) Defendants seek the dismissal of all claims against them contained in Plaintiffs' Amended Complaint. (ECF No. 12.) For the following reasons, Defendants' Motion (ECF No. 25) is **GRANTED in part** and **DENIED in part**.

### I.

Plaintiffs, Alan K. Stuart, Trustee of The Cecil G. Stuart and Donna M. Stuart Revocable Living Trust Agreement ("Start Trust"), and CDS Development LLC ("CDS") (collectively "Plaintiffs"), bring this patent infringement action against Defendants RPM International, Inc. ("RPM"), Rust-Oleum Corporation ("Rust-Oleum"), Wipe New LLC, and The Avento Corp. ("Avento") (collectively "Defendants"), pursuant to 35 U.S.C. § 1 *et seq.* seeking injunctive relief and damages for infringement of U.S. Patent No. 6,669,991.

Plaintiffs allege that Stuart discovered a new and unconventional method of restoring the color of the vinyl siding commonly found on the exterior of houses by applying a combination of organic solvents, contrary to industry guidance, to the greasy and faded surface of his vinyl

siding. (Amended Complaint ("Compl.") ¶¶ 1–3, ECF No. 12.) On December 30, 2003, The United States Patent and Trademark Office ("USPTO") issued U.S. Patent No. 6,669,991 ("'991 Patent"), entitled "Method and Composition for Rejuvenating Weathered Polymeric Materials," to Stuart. (*Id.* ¶ 4.) The '991 Patent encompasses the vinyl-restoring organic solvent and the method for producing the solvent. (Compl. Exhibit A ("Compl. Ex. A"), ECF No. 1-1.) According to the patent, the purpose of Plaintiffs' invention is to rejuvenate the original color and gloss of vinyl resins that can become discolored, chalky, or brittle when exposed to weather and ultraviolet light. (*Id.*)

While Stuart was in the process of obtaining the '991 Patent, he alleges that he entered into negotiations with major chemical companies, including Zinsser Co., Inc. ("Zinsser") for the purpose of commercializing his formula. Stuart alleges that he shared several gallons of his formula with Zinsser and that he notified Zinsser of his patent protection. (Compl. ¶ 6.) Ultimately Zinsser declined to license Stuart's formula, citing concerns with their ability to establish successful sales of a "new-to-the-world" product. (*Id.* ¶ 35.) Defendant RPM International, Inc. ("RPM") is the parent corporation of Zinsser. (Compl. ¶¶ 8, 11–12.) On or about December 30, 2008, RPM effectuated a merger of its subsidiary Zinsser with Defendant Rust-Oleum Corporation ("Rust-Oleum"), another RPM subsidiary. (*Id.* ¶ 36.) Upon this merger, the intellectual property rights and information held by Zinsser were allegedly absorbed by Rust-Oleum. (*Id.*)

After receiving the '991 Patent, Stuart subsequently assigned all rights and interest in the patent to the Stuart Trust in 2003 and later in 2016 to Plaintiff CDS Development LLC ("CDS")—a business owned by Stuart and the Stuart Trust. (Compl. ¶¶ 5, 10, 31.) After Zinsser declined to license Stuart's formula, Stuart determined that he could produce and market a product himself. (Compl. ¶ 32.) Stuart has been selling his formula since the early 2000s under

the name New Side through one or more of his entities. (*Id.*) New Side is currently being sold through CDS.

Plaintiffs allege that in 2013, Rust-Oleum, in conjunction with Defendant Wipe New LLC, began commercializing a product branded as "Rust-Oleum ReColor by Wipe New" ("ReColor"). (Compl. ¶ 37.) Defendant Avento, which is allegedly related to Wipe New LLC, also began selling the product. (*Id.* ¶¶ 37, 39.) Avento sold the product under the rebranded name Wipe New®, which was allegedly available at every major retailer nationwide. (*Id.* ¶ 39.) Plaintiffs assert that the product is "marketed through Rust-Oleum's and Wipe New LLC's webpages." (*Id.* ¶¶ 37–38). Wipe New LLC's website indicates that the primary use of ReColor is to restore and protect various household surfaces, including shutters, siding, and other vinyl products. (*Id.* ¶ 38.) Rust-Oleum's website explains that ReColor restores color to faded surfaces and encourages customers to visit the product's YouTube channel for helpful tips. (*Id.* ¶¶ 40–41.) A video on the YouTube channel then informs customers that ReColor can be used to restore vinyl siding. (*Id.* ¶¶ 42–43.)

Plaintiffs next allege that Rust-Oleum, in collaboration with RPM, has commercialized an alleged infringing product called NeverWet. (Compl. ¶¶ 8, 47–48.) NeverWet is a product that is designed to repel water from the surface on which it is applied. It primarily consists of an organic solvent and is sold in a variety of forms, including gallon-sized containers. (*Id.* ¶¶ 23, 47.) Rust-Oleum sells a base coat and top coat of NeverWet, bot marketed for use on vinyl siding. (*Id.* ¶ 23, 49.)

Lastly, Plaintiffs allege that Defendant Wipe New LLC, in conjunction with Defendant Avento, sells an infringing product branded as "Wipe New (Home & Outdoor)." (Compl. ¶ 53.) Similar to the marketing of ReColor, the RPM website promoting Wipe New (Home &

Outdoors) includes promotional advertising which indicates that the primary use of the product is to restore and protect surfaces, including vinyl. (*Id.* ¶¶ 54–55.) According to Plaintiffs, the product packaging for the "easy to Use Wipe-It-Kit" depicts a house with what appears to be vinyl siding. (*Id.* ¶ 55.)

Plaintiffs allege that each of these three products—ReColor, Wipe New (Home & Outdoor), and NeverWet are infringing the '991 Patent's independent method claims 1 and 20. Claims 1 and 20 each make reference to the particular solubility parameter for the invention. Specifically, the patent describes the invention as "a method for rejuvenating a vinyl resin surface, the method comprising applying a composition to the surface, where the composition includes at least one organic solvent compound that has a solubility parameter ($\delta$) of from about 8.0 to about 10.6 $(cal.cm^3)^{1/2}$. (*Id.*) Solubility parameters measure the cohesive energy of a liquid, i.e. how much energy it takes to evaporate a liquid. Plaintiff's product is designed to contain solubility properties that "match" the solubility parameter of vinyl siding. However, according to Defendants, the '991 Patent offers two different formulas to measure the "solubility parameter," which allegedly produces a different result depending on which is employed. These two formulas are identified as the "Hildebrand" solubility parameter and the "Hansen" solubility parameter, according to the publications incorporated by reference in the patent. (Defendants' Exhibit C, ECF No. 25-3.) Defendants allege that the '991 Patent does not indicate which formula should be applied to the various claims, particularly here claims 1 and 20.

Plaintiffs allege that each of Defendants' products has a solubility parameter between 8.0 and 10.6 $(cal.cm^3)^{1/2}$ and therefore infringes on independent method claims 1 and 20 of the '991 Patent. (*Id.* ¶¶ 44, 50, 57.) Plaintiffs bring two causes of action against Defendants for direct patent infringement in violation of 35 U.S.C. § 271(a) and induced patent infringement. (*Id.* ¶¶

4

46, 52, 58, 61.) According to Plaintiffs, all Defendants directly infringed or induced infringement of the patent through their commercialization of ReColor. (*Id.* ¶ 61.) RPM and Rust-Oleum allegedly infringed or induced infringement of 'the patent through their commercialization of NeverWet. Lastly, Wipe New LLC and Avento allegedly directly infringed or induced infringement of 'the patent through their commercialization of WipeNew (Home & Outdoor). (*Id.*)

Defendants now move to dismiss Plaintiffs' claims on two grounds. First, Defendants argue that the claim term "solubility parameter" found in method claims 1 and 20 of the '991 Patent is fatally indefinite, rendering the '991 Patent invalid. (Defendants' Motion to Dismiss ("Mot. to Dismiss") at 1, 12–17, ECF No. 25.) Second, Defendants argue that Plaintiffs have failed to allege a plausible claim of direct infringement or induced infringement with respect to the NeverWet product (*Id.* at 1, 17–22.) Plaintiffs subsequently filed their Opposition to Defendants' Motion to Dismiss (ECF No. 30), to which Defendants filed a Reply in Support of their Motion to Dismiss (ECF No. 35). Defendants' motion is now ripe for consideration.

## II.

Until December 1, 2015, the Federal Circuit recognized that, for allegations of direct patent infringement, it was sufficient to comply with the standard set by Form 18 of the Appendix of Forms to the Federal Rules of Civil Procedure, rather than that articulated in *Twombly* and *Iqbal*. However, effective December 1, 2015, the Federal Rules of Civil Procedure were amended to abrogate Rule 84, which provided that "[t]he forms in the Appendix suffice under these rules and illustrate the simplicity and brevity that these rules contemplate." This abrogated the Appendix of Forms, including Form 18. Since this change, the majority of district courts have assessed the sufficiency of claims for direct patent infringement under the standard set forth in *Twombly* and *Iqbal*.

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Such an action will be dismissed where "there is no law to support the claims made" or where "the facts alleged are insufficient to state a claim." *Stew Farm, Ltd. v. Natural Res. Conservation Serv.*, No. 2:12-cv-299, 2013 WL 4517825, at *3 (S.D. Ohio Aug. 26, 2013) (citing *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978)). Federal Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To meet this standard, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* (quoting *Twombly*, 550 U.S. at 557).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and accept all of the complaint's well-pleaded factual allegations as true. *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998).

### III.

Federal law provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States, or imports into the United States any patented

invention during the term of the patent therefore, infringes the patent." 35 U.S.C. § 271(a). To state a claim for direct patent infringement, a plaintiff must allege sufficient facts that the accused product contains "elements identical or equivalent to each claimed element of the patented invention." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997). "Under the 'all elements' rule, to find infringement, the accused device must contain 'each limitation of the claim, either literally or by an equivalent.'" *TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1379 (Fed. Cir. 2008) (quoting *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005).

To state a claim for inducement of patent infringement under 35 U.S.C. § 271(b), "the patentee must establish first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *ACCO Brands, Inc. v. ABA Locks Mfrs. Co., Ltd.*, 501 F.3d 1307, 1312 (Fed. Cir. 2007). More specifically, unlike direct infringement "the patentee must show that the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement." *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014) (citing *Global-Tech Appliances, Inc.*, 563 U.S. at 765-66). Knowledge is attributable to a defendant who acts with willful blindness. *Global-Tech Appliances, Inc.*, 563 F.3d at 766-67.

Here, Defendants set forth two bases for seeking dismissal of Plaintiffs' claims. First, Defendants argue that both of Plaintiffs' patent infringement claims are fatally indefinite because the patent fails to identify which of the two disclosed solubility parameters should be used to evaluate potential infringement. Second, Defendants argue that Plaintiffs' claims regarding the NeverWet product should be dismissed because Plaintiffs have failed to allege that Defendants used or induced others to use the product to rejuvenate vinyl siding as described in the '991 patent.

7

## A. Indefiniteness of Solubility Parameters

Defendants argue that Plaintiffs' claims are invalid for indefiniteness because they lack the "required guidance for determining the appropriate solubility parameter" in whether a certain solvent falls within the protected scope of claims 1 and 20 of the '991 Patent. (Mot. to Dismiss at 3–4, 12–17.) In response, Plaintiff argues that Defendants' motion is premature as indefiniteness is a matter to be determined at claim construction.

Patents are presumed valid. 35 U.S.C. § 282(a). More specifically, "[e]ach claim of a patent (whether in independent, dependent, or multiple dependent form) [is] presumed valid independently of the validity of other claims . . . ." *Id.* The presumption of patent validity places a burden on a challenger to prove invalidity by clear and convincing evidence. *Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1260 (Fed. Cir. 2012). "[W]hen Congress enacted the first Patent Act in 1790, it directed that patent grantees file a written specification "containing a description ... of the thing or things ... invented or discovered," which "shall be so particular" as to "distinguish the invention or discovery from other things before known and used." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124–25 (2014) (citing Act of Apr. 10, 1790, § 2, 1 Stat. 110). Thus, "[a] patent is invalid for indefiniteness if its claims . . . fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Id.* at 2124. Definiteness is to be evaluated from the perspective of someone skilled in the relevant art at the time the patent was filed and read in the light of the patent's specification and prosecution history. *Id.* at 2128.

Defendants argue that the specification of the '991 Patent is indefinite because it identifies two methods for determining a solvent's solubility parameter, the Hansen parameter and the Hildebrand parameter, yet fails to provide guidance as to which method should be used to

8

determine the appropriate solubility parameter. (*Id.* at 14.) Because the patent specification references two methods for determining a solvent's solubility parameter, "a number of solvents will fall within the [patent] claims by one measure of solubility parameter, and outside the claims by the other measure." (*Id.*) This uncertainty, Defendants argue, renders the claims of the '991 Patent containing references to the "solubility parameters" indefinite and therefore invalid. (*Id.* at 14–17.) Although definiteness is assessed from the viewpoint of one of ordinary skill in the field, Defendants have not described the knowledge and experience of this person. *See Nautilus*, 134 S. Ct. at 2124.

Plaintiffs, by contrast, argue that Defendants' motion to dismiss for indefiniteness is premature because assessing indefiniteness under 25 U.S.C. § 112 ¶ 2 requires claim construction, which has not yet occurred in this case. (Plaintiff's Opposition to Defendants' Mot. to Dismiss ("Pl. Opp.") at 4–7, ECF No. 30.) They additionally argue that the inclusion of both the Hansen and Hildebrand solubility parameters in the '991 Patent specification is necessary because inclusion of both teaches those skilled in the art that some compounds have only been classified under the Hansen parameter scheme, while other compounds are only classified under the Hildebrand parameter scheme. (Pl. Opp. at 7–10.) They claim that "[h]aving both parameters available gives researchers more data points to know whether the solvents . . . would be inside or outside the scope of the claims." (*Id.* at 10.)

With respect to Defendants' argument that certain compounds fall both inside and outside the specified solubility parameters depending on whether the Hildebrand or the Hansen parameter is employed, Plaintiffs argue that Defendants ignore the word "about" in claims 1 and 20 and fail to address the claim construction issues surrounding this term. Plaintiffs emphasize that claims 1 and 20 described the solubility parameter as "from *about* 8.0 to *about* 10.6

$(cal.cm^3)^{1/2}$". (Pl. Opp. at 10 (citing Compl. Ex. A (emphasis added)).) Further, the patent asserts that a solubility parameter "matches" if it is within 1.8 $(cal.cm^3)^{1/2}$ of the identified solubility parameter. Thus, according to Plaintiffs, even if a calculated solubility parameter is outside the 8.0 to 10.6 range, it may still be within 1.8 on either side of that range and still be contemplated by the claim.

The Federal Circuit has observed that "an analysis under [35 U.S.C.] § 112, ¶ 2 is inextricably intertwined with claim construction." *Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1379 (Fed. Cir. 1999). Because the issue of whether a patent claim is indefinite is closely intertwined with claim construction, which has not yet occurred in this case, addressing Defendants' indefiniteness argument would be premature. *See Id.* at 1379. As Plaintiffs note, numerous district courts have declined to entertain indefiniteness arguments at the pleading stage for precisely this reason. *See, e.g., XLEAR, INC. v STS Health*, LLC, 2015 WL 8967574, *7 (D. Utah 2015) (denying motion to dismiss for indefiniteness concerning chemical parameters, noting that "neither of the cases cited by STS establish that indefiniteness is decided at the motion to dismiss stage"); *Johnstech Int'l Corp. v. FJ Technology Berhad*, 2015 WL 2062223, *3 (N.D. Cal. 2015) (denying motion to dismiss for indefiniteness, remarking that "[b]ecause an analysis under § 112 ¶2 is inextricably intertwined with claim construction, which has not yet occurred, this motion is premature."); *Titanide Ventures, LLC v. Int'l Business Machines Corp.*, 2012 WL 5507327, *3 (E.D. Tex. 2012) (rejecting indefiniteness challenge on Rule 12 motion, agreeing that "construction is exactly what is required before a ruling can be made concerning the alleged invalidity of the claim"); *H-W Technology, L.C. v. Apple, Inc.*, 2012 WL 959316, *3 (N.D. Tex. 2012) (same).

Although a district court dismissed the patent claims as indefinite in *In re TLI Commc'ns*

*LLC Patent Litig.,* 87 F. Supp. 3d 773, 776, 798-804 (E.D. Va. 2015), *aff'd on other grounds*, 823 F.3d 607 (Fed. Cir. 2016), the motion to dismiss there asserted a different statutory provision from the one raised here § 112 ¶ 6, as opposed to § 112 ¶ 2. That provision of the statute allows an applicant to state a claim in the form of means for performing a specific function without reciting in the claim the structure corresponding to that function. *Id.* at 798. The parties dispute whether this means-plus-function rule is more amenable to a legal determination as opposed to the fact-intensive analysis required under ¶ 2. (Pl. Opp. at 7.) Important to note here, however, is that the motion to dismiss in *In re TLI* was decided well after the pleading stage, by which point the claim construction positions were already fully briefed their and the court had heard extensive oral argument. *Id.* at 782.

Defendants also rely on *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1345 (Fed. Cir. 2015), in support of their claim that the '991 Patent claims are indefinite. In *Teva*, the Federal Circuit found that the patent claims were indefinite because the term "average molecular weight" did not have a plain meaning to those skilled in the art and the claim on its face offered no guidance on which measure of "molecular weight" to use. *Id* at 1346. Yet, the Federal Circuit in *Teva* also issued its decision only after the record was fully developed and the Supreme Court had remanded the case back to the Federal Circuit. As Plaintiffs note, in contrast to this case, the *Teva* decision followed a full bench trial with expert testimony. *See Teva Pharmaceuticals USA, Inc. v Sandoz, Inc.*, 876 F. Supp. 2d 295, 400–01 (S.D.N.Y. 2012).

Defendants additionally cite to *Dow Chemical Co. v. Nova Chemicals Corp.*, 803 F.3d 620, 630 (Fed. Cir. 2015). There, the court held that the patent-in-suit would not allow a person of ordinary skill in the art to compute the slope coefficient necessary to stretch a certain material. *Id.* at 633. Four methods were known to those with ordinary skill in the art for calculating the slope method, yet none of the methods were disclosed in the claims, specification, or prosecution

history of the patent. The court stated that "[n]either the patent claims nor the specification here discusses the four methods or provides any guidance as to which method should be used or even whether the possible universe of methods is limited to these four methods." *Id.* at 634. Accordingly, the Federal Circuit found that patent invalid for indefiniteness. However, as in *Teva* and *In re TLI*, the Court in *Dow Chemical* based its ruling on extensive trial testimony upon which it found that the patentee's expert's measurement was unsupported by the patent.

In contrast here, the parties have not yet identified claim terms to be construed or exchanged their proposed constructions of those terms, much less briefed or argued their claim construction positions to the Court. Claim construction is necessary to determine whether a person having ordinary skill in the art would understand whether the solubility parameter under either the Hansen or Hildebrand parameter meets the limitation set forth in the claims. Because an analysis under § 112, ¶ 2 is inextricably intertwined with claim construction, which has not yet occurred, this motion is premature. Defendants' motion to dismiss Plaintiffs' claims on the basis of indefiniteness is **DENIED**.

**B.    Plaintiffs' Claims Regarding NeverWet**

Defendants next argue that Plaintiffs' claims regarding NeverWet fail to state a plausible claim for relief because Plaintiffs only allege that the product is used on vinyl siding, but fail to allege that it is used to *rejuvenate* vinyl siding specifically. To state a claim of direct infringement, Plaintiffs must allege specific facts plausibly establishing that a third party has actually performed each step of the patented method and that the accused device contains "each limitation of the claim." *See TIP Sys.*, 529 F.3d at 1379. Here, claims 1 and 20 of the '991 Patent describe the invention as a method for "rejuvenating the surface of vinyl siding" or "rejuvenating and cleaning the surface of weathered vinyl siding" by using a composition consisting of organic

12

solvents at the given particular solubility parameter. (Compl. Ex. A.) To state a claim for induced infringement, "the patentee must establish first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *ACCO Brands*, 501 F.3d at 1312. These allegations are missing from Plaintiffs' Amended Complaint.

Plaintiffs allege that Defendants directly and indirectly infringed the '991 Patent by using or inducing others to use NeverWet on vinyl siding. (Compl. ¶¶ 47–52.) Plaintiffs state that RPM and Rust-Oleum marketed the product NeverWet as "suitable for use on . . . vinyl siding . . . ," and further that "[u]sing NeverWet on vinyl siding, or inducing others to use NeverWet on vinyl siding infringes at least independent method claims 1 and 20 of the Stuart Patent." (Compl. ¶ 23, 52.) While Defendants acknowledge that NeverWet is marketed for use on vinyl siding, they maintain that Plaintiffs fail to allege that the product is used to rejuvenate vinyl siding in particular.

> In other words, none of these paragraphs allege any use by Defendants – any internal development, testing, and quality control, or process of demonstrating, selling, or marketing – that involved application of NeverWet® to vinyl siding that was capable of being rejuvenated, i.e., "susceptible to deterioration," discolored, chalky, less glossy, or brittle. Application to vinyl siding alone, regardless of condition, is not an infringement; in fact, applying NeverWet® to new vinyl siding cannot plausibly "rejuvenate" the vinyl siding – there is simply nothing to rejuvenate.

(Mot. to Dismiss at 18.)

Plaintiffs argue in response that they sufficiently alleged that Defendants marketed NeverWet for use on vinyl—which Defendants do not dispute—and that NeverWet contains the same organic solvents and the same solubility parameters as the other allegedly infringing products. Plaintiffs argue that just because a product may have non-infringing uses does not preclude allegations that a defendant intends its customers to use the product in an infringing manner. (Pl. Opp. at 13.) In other words, although NeverWet is marketed for use on vinyl for

13

purposes other than rejuvenation, it may also work to restore vinyl.

Even if NeverWet customers used the product to rejuvenate vinyl, Plaintiffs have still failed to allege that Defendants had knowledge of or intended to induce such use. *See In re Bill of Lading Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012). Defendants also argue that their intent cannot be inferred based on these allegations. (Mot. to Dismiss (citing *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1365 (Fed. Cir. 2003) ("Especially where a product has substantial noninfringing uses, intent to induce infringement cannot be inferred even when the defendant has actual knowledge that some users of its product may be infringing the patent.")).) According to Plaintiffs, it is plausible that Defendants "were fully aware of the rejuvenating power of these solvents" through Stuart's disclosure to Zinsser about the use of the particular organic solvents. (*Id.* at 17.) Yet, as Defendants point out, Plaintiffs make this claim for the first time in their opposition to Defendants' Motion to Dismiss. Plaintiffs' Amended Complaint fails to allege any inference that Defendants intended their customers to use NeverWet to rejuvenate vinyl siding.

Plaintiffs do allege in their Amended Complaint, in somewhat of a conclusory fashion,

> [A]ll Defendants induce end-users to use the specified products (e.g., ReColor, NeverWet, and Wipe New (Home & Outdoor)) on vinyl siding to rejuvenate its appearance. The television ads, videos, and other promotion material reference above specifically encourage users to apply the specified products to vinyl siding to restore the vinyl's original color.

(Compl. ¶ 68.) Plaintiffs allege that Rust-Oleum advertises NeverWet through its website at www.rustoleum.com. (Compl. ¶ 47.) Yet, Plaintiffs do not allege specific facts showing that Defendants market NeverWet to restore or rejuvenate vinyl siding. Regarding the other products, Plaintiffs allege that Defendants advertise that "Wipe New Recolor instantly restores color and shine to your faded surface," and that Wipe New "restores and protects" vinyl. (*Id.* ¶¶ 41, 55.)

14

No such allegations, however, are present with respect to NeverWet.

According to Defendants, the NeverWet marketing materials referenced do not claim to restore the vinyl's original color, but rather advertise the product as a liquid repelling treatment for creating a moisture barrier on a variety of surfaces. (Mot. to Dismiss at 18.) The NeverWet marketing materials describe the product as a "superhydrophobic treatment" that causes liquids to form perfect spheres that roll off of surfaces. (Mot. to Dismiss at 19–20; Defendants' Exhibit D, ECF No. 25-4.) Defendants maintain that applying NeverWet to new vinyl as directed cannot possibly "rejuvenate it" as required to infringe the claims. (Defendants' Reply in Support at 10, ECF No. 35.) Plaintiffs posit in their response brief that NeverWet's water repellant quality is an added feature, which does not detract from its ability to rejuvenate vinyl surfaces. Plaintiffs do not put forth any particular facts showing that NeverWet does in fact rejuvenate vinyl, but rather speculates that it is possible because the product contains similar organic solvents as the '991 Patent.

Defendants further argue that Plaintiffs' claims fail because they do not allege that any customers actually used NeverWet to rejuvenate weathered vinyl siding. Plaintiffs contend there is a reasonable inference that at least one direct infringer exists given that Defendants specifically marketed NeverWet for use on vinyl siding and knew that the organic solvents it contained were capable of restoring weathered vinyl. Although a plaintiff "need not identify a specific direct infringer if it pleads facts sufficient to allow an inference that at least one direct infringer exists," the Amended Complaint here again fails to allege such an inference. (Pl. Opp. at 19 (citing *In re Bill of Lading*, 681 F.3d at 1336.)

The fact that NeverWet contains similar organic solvents and is marketed for use on vinyl is insufficient to state a plausible claim for direct or induced patent infringement of the '991 Patent.

Ultimately, Plaintiffs fail to sufficiently allege that NeverWet is used by Defendants to rejuvenate vinyl siding or that Defendants intended to induce such use in violation of the patent. Defendants' Motion to Dismiss as it relates to NeverWet on both counts is therefore **GRANTED**.

### III.

For the reasons stated, Defendants' Motion to Dismiss (ECF No. 25) is **GRANTED in part** with respect to Plaintiffs' claims regarding the sale of NeverWet and **DENIED in part** on Plaintiffs' remaining claims.

**IT IS SO ORDERED.**

9-21-2017
**DATE**

**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**